IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PABLO A. DAMIANI, :
:
       Plaintiff, :
:
v. : Civ. No. 12-1637-RGA
:
DETECTIVE DUFFY, et al., :
:
       Defendants. :

---

Pablo A. Damiani, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Michael F. McTaggart, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Detective Duffy, Gary Potts, Daniel Grassi, Corporal Lano, Eric Daniels, John Dudzinski, Mark Hawk, Ronald Kline, Corey Godek, Detective Tsai, Detective Rhoades, and Detective Glenn.

Charles M. Oberly III, United States Attorney, and Jennifer Lynne Hall and Lauren Mary Paxton, Assistant United States Attorneys, Wilmington, Delaware. Counsel for Defendants Casey Bouldin, Detective Morrissey, Ronald Kline, and the United States of America.

Rosamaria Tassone, Esquire, City of Wilmington Law Department, Wilmington, Delaware. Counsel for Defendants Wilmington Police Department and Detective Morrissey.

**MEMORANDUM OPINION**

November 5, 2014
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Pablo A. Damiani, an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears pro se and has been granted leave to proceed *in forma pauperis* (D.I. 7). The case proceeds on the second amended complaint (D.I. 29) that raised excessive force claims against Defendants Detective Casey Bouldin, Detective Gary Potts, Corporal Lano, Detective Duffy, Detective Daniel Grassi, Corporal Eric Daniels, Corporal John Dudzinski, Sargent Mark Hawk, Detective Ronald Kline, Detective Corey Godek, Detective Cliff Vikara,[1] Detective Morrissey, Detective Giofre, Detective Tsai, Detective Rhoades, Detective Glenn, Unknown State Police Officers, Unknown New Castle County Police Officers, Unknown Wilmington Police Officers, and the United States of America.

## BACKGROUND

The second amended complaint alleges that on December 6, 2010, Plaintiff's vehicle was stopped by members of a joint ATF task force composed of several plainclothes officers. Plaintiff was handcuffed by Defendant Detective Bouldin who held onto Plaintiff as he was being removed from the vehicle. Plaintiff alleges that he was "violently remove[d] from the vehicle through the driver's side door and thrown face first onto the pavement," was "briefly beaten about the head, upper body and face, and kicked by the unknown officers." Plaintiff stood, and was escorted to the side of the

---

[1]To date, Defendants Vikara and Giofre have not been served, the USM-285 forms indicating that when service was attempted, the Delaware State Police stated that these defendants were not known to it. (*See* D.I. 96, 97). Plaintiff will be ordered to show cause why these defendants should not be dismissed for failure to timely serve pursuant to Fed. R. Civ. P. 4(m).

road. Plaintiff alleges that he was "beaten, this time for a significantly longer period of time with his hands cuffed behind his back." Plaintiff alleges that he was punched, kicked, slapped, spat upon, and hit with a hard object. Plaintiff alleges that next, the plain clothes officers sat upon him with their knees on his neck and back and waited for a marked police car to transport him to the police headquarters. Plaintiff asked for medical attention, and he was taken to the Newark Emergency Center approximately two and one-half hours later. He alleges that the acts of Defendants violated his rights under the Eighth Amendment to the United States Constitution and also constitute the tort of assault and battery under Delaware law.[2] Plaintiff seeks compensatory and punitive damages.

On May 15, 2014, the United States filed a notice of substitution pursuant to 28 U.S.C. § 2679(d)(1) for Defendants Bouldin, Morrissey, and Kline as set forth in the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq.*, with respect to the state law claims of assault and battery raised against them as they were acting within the scope of their federal office or employment during the relevant time-frame. (D.I. 70). The United States moves for dismissal of the claims against it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (D.I. 71), Bouldin moves for dismissal of the *Bivens* claims raised against him pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 72), and the City of Wilmington and Defendant Wilmington Police Department move to dismiss the claims

---

[2]When bringing a claim under 42 U.S.C. § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). When a litigant sues federal actors for damages on constitutional grounds, the claim is governed by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 389 (1971).

raised against them in the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) . (D.I. 100). In addition, Plaintiff requests counsel. (D.I. 105, 113).

## MOTIONS TO DISMISS

Standards of Review

Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 357-58 (3d Cir. 2014). "In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* at 358 (quoting *In re Schering Plough Corp. v. Intron,* 678 F.3d 235, 243 (3d Cir. 2012)). In reviewing a factual attack, the court may consider evidence outside the pleadings. *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

The United States' motion presents a factual attack upon subject matter jurisdiction, arguing that this Court lacks jurisdiction over the claims due to the plaintiff's failure to exhaust his administrative remedies. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. *Id.* at 891. In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists. *Id.*

Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those

allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014).

To determine whether a complaint meets the pleading standard as set forth in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the court must: (1) outline the elements a plaintiff must plead to a state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012 ) (internal citations omitted) (citing *Iqbal*, 556 U.S. at 679; *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Because Plaintiff proceeds *pro se*, his pleading is liberally construed and, "however

4

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Discussion

Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1). The United States moves for dismissal of the tort claims raised under the FTCA on the grounds that Plaintiff failed to exhaust his administrative remedies as is required under the FTCA. (D.I. 71). The United States provided evidence (in the form of a declaration) that there is no record of any administrative claim presented by, or on behalf of, Plaintiff from December 2010 to the present.

Plaintiff responds with case law discussing qualified immunity. (D.I. 77). He states that he filed a claim with the administrative agency whom he assumed was responsible for his injuries and that he wrote a letters to the Attorney General, dated February 14, 2012 and November 5, 2012 (*Id.* at 8-9; ex. A-7-10; ex. A-11-12). Both letters indicate that Plaintiff was not satisfied with the internal affairs' investigation and ask for an investigation of the occurrence. Also, the February letter asks "for justice." The U.S. Department of Justice Civil Rights Division responded to Plaintiff and advised him that the matter would be considered if he provided additional information concerning the circumstances involved. (*Id.* at ex. A-13). It was suggested to Plaintiff that he could obtain information by making a Freedom of Information Act request. (*Id.*)

The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

5

acting within the scope of his office or employment [.]" 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674. As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.).

A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. § 14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. § 2675(a).

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, . . . the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citing *Livera v. First Nat'l Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir. 1989)); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

6

Full administrative exhaustion is a jurisdictional prerequisite to filing a lawsuit. Accordingly, where an FTCA lawsuit is filed before the exhaustion process is completed, the court is compelled to dismiss that action. *See Miller v. United States*, 517 F. App'x 62, 63 (3d Cir. 2013); *Roma*, 344 F.3d at 362. Moreover, "[a p]laintiff carries the burden of proof to establish presentment of h[is] claim [to the appropriate Federal Agency]." *Medina v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir. 2007). In order to satisfy this burden, "a plaintiff must demonstrate that the appropriate federal agency actually received the claim." *Id.* (citations omitted). Presenting a claim requires more than merely mailing the claim. *Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009).

Here, the United States submitted a declaration of the Associate Chief Counsel at the Bureau of Alcohol, Tobacco, Firearms and Explosives who is "responsible for coordinating the resolution of all FTCA administrative claims presented to ATF and for maintaining the original files of those claims." (D.I. 17, ex. A). She has no record of Plaintiff filing any administrative claim. Plaintiff, in turn, does not offer proof of receipt by the agency. Instead, he refers to letters he wrote to the Attorney General of the United States wherein he complains of the events that took place on December 6, 2010, seeks an investigation, but does not make a claim for damages in a sum certain. The letters do not adequately present a claim and fail to meet the exhaustion requirement under the FTCA. Accordingly, the Court determines that Plaintiff has failed to meet his burden of establishing subject matter jurisdiction as to the FTCA claims. Therefore, the Court will grant the United States' motion to dismiss for lack of subject matter jurisdiction. (D.I. 71).

Failure to State a Claim, Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 12(b)(6), Bouldin moves to dismiss the constitutional claims raised against him, as do the City of Wilmington and the Wilmington Police Department.³ (D.I. 72, 100).

The Wilmington Defendants move for dismissal on the grounds that the Police Department is not subject to suit and the complaint fails to establish municipal liability. While Plaintiff filed a response, it does not appear that he opposes the motion. The Court notes that the City of Wilmington has never been named as a defendant and the Wilmington Police Department was dismissed as a defendant on July 12, 2013. (*See* D.I. 18, 19). The Police Department was not reinstated as a defendant upon the filing of the Second Amended Complaint, although other defendants were. (*See* D.I. 28). Therefore, the motion will be dismissed as moot as the Wilmington Defendants are no longer parties to this action.⁴

Bouldin argues that the excessive force claims against him were raised outside the applicable two-year limitation period and do not relate back to the date of the original complaint. Plaintiff opposes the motion, noting that Bouldin was named as a defendant in the original complaint. (D.I. 87).

---

³The United States has stated that Bouldin was acting within the scope of his federal office or employment during the relevant time-frame. Therefore, the allegations fall under the umbrella of a *Bivens* claim. See n.2, *supra*.

⁴The Wilmington Defendants' belief that they were parties to the suit may stem from the fact that the chief executive officer of the City of Wilmington was served with a copy of the Second Amended Complaint. In entering service orders when a plaintiff proceeds *pro se* and has been granted *in forma pauperis* status, it is the Court's practice to serve the chief executive officer of a governmental entity as a means to alert it of a lawsuit filed against its employees when the entity is not a named defendant. (*See* D.I. 28).

8

In *Bivens* actions, the rules for determining the limitation period are the same as those used in 42 U.S.C. § 1983 actions. *See Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1087 (3d Cir. 1988). The court looks "to the general, residual statute of limitations for personal injury actions" from the state where the federal court sits unless the state limitations period is inconsistent with the Constitution or federal law. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). The court must also account for the state's tolling rules. *Id.* In Delaware, *Bivens* actions are subject to a two-year limitations period. *See* 10 Del. C. § 8119. Plaintiff alleges that excessive force took place on December 6, 2010. Therefore, any *Bivens* claim against Bouldin is barred unless it was filed on or before December 6, 2012, or relates back to the original, timely filed complaint. The original complaint was filed no later than December 3, 2012.[5] (D.I. 2).

Federal Rule of Civil Procedure 15(c) permits a party to file an otherwise untimely claim in an amended pleading where the claim relates back to the party's original pleading in the action. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 540 (2010). An amendment relates back to the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The

---

[5]The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule" which deems a complaint or petition filed as of the date it was delivered to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Here, Plaintiff's Complaint was signed on November 24, 2012, and the envelope it was mailed in is post-marked December 3, 2012. Therefore, plaintiff's complaint was delivered to prison authorities for mailing some time between November 24, 2012 and December 3, 2012.

Court of Appeals has stated that "the touchstone for relation back is fair notice," and that "only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover v. Federal Deposit Ins. Corp.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

The original complaint named Bouldin as a defendant. It contained numerous allegations concerning the December 6, 2010 incident. Upon screening, the court noted that Plaintiff alleged what appeared to be a cognizable excessive force claim, but it did not identify the individuals who allegedly assaulted him. Therefore, Plaintiff was given leave to amend since it appeared plausible that he could articulate a claim against the defendants or name alternative defendants. (D.I. 11 at 8). The amended complaint, filed May 7, 2013, again named Bouldin as a defendant, and its allegations were specifically directed towards him. Plaintiff was allowed to proceed against Bouldin following screening of the amended complaint. (D.I. 19). Plaintiff filed a second amended complaint and again named Bouldin as a defendant. (D.I. 29).

Bouldin argues that the amended complaint (D.I. 15) does not identify him as having participated in the alleged excessive force, but only as the individual who handcuffed and held onto Plaintiff until he was removed from the vehicle. Bouldin contends that the allegations are that the excessive force occurred after Plaintiff was thrown to the pavement. He also references the testimony he provided at Plaintiff's criminal trial (attached to the amended complaint) to support his position of his limited role in Plaintiff's arrest. Bouldin argues that the transcript indicates that Plaintiff knew what he looked like because he testified at Plaintiff's criminal trial. It is Bouldin's

10

position that despite the foregoing, Plaintiff did not allege in the original complaint or amended complaint that Bouldin participated in the alleged beating, but instead, both complaints allege the beating was conducted by unknown officers.[6]

Bouldin relies upon Fed. R. Civ. P. 15(c)(1)(C) and its requirement "that the defendant to be added to the claim 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" (D.I. 73 at 10). The amendments, however, are not governed by Rule 15(c)(1)(C) but by 15(c)(1)(B) which provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out - in the original pleading.[7] Of utmost import is "whether the original complaint adequately notified the defendants of the basis for liability the plaintiff would later advance in the amended complaint." See *Glover*, 698 F.3d at 146 (citations omitted).

---

[6]The Second Amended Complaint contains the same basic allegations, but also alleges that once Plaintiff was thrown to the pavement, he was beaten about the head, upper body, and face and kicked by the detectives. (D.I. 29). Bouldin is a detective.

[7]Bouldin argues that there is no relation back when the plaintiff knows the identity of the party he later seeks to add as a defendant to a claim, citing a number of cases. Those cases are inapposite as they concern instances when a known party was not named in the original complaint because the plaintiff made a decision not to include the defendant. In the instant case, Plaintiff consistently named Bouldin as a defendant, despite his deficient pleading skills.

In addition, Bouldin incorrectly posits that Plaintiff could have obtained service of his original complaint pursuant to Fed. R. Civ. P. 4(c)(3) after he was given leave to proceed *in forma pauperis* by merely requesting service and that the court would have been required to grant the request. See *In re Forrest*, 403 F. App'x 768 (3d Cir. 2010) (district court is not required to order the United States Marshals Service to serve a complaint filed by an inmate proceeding *in forma pauperis* under Fed. R. Civ. P. 4(c)(3) until it had first screened the case pursuant to 28 U.S.C. § 1915A).

The original complaint contains the following allegations:

> Officers placed cuffs on Plaintiff's hands, Plaintiff was then violently ripped from the vehicle, thrown to the pavement and beaten and kicked by these unknown defendants.

(D.I. 2).

The amended complaint contains the following allegations:

> Bouldin placed handcuffs on the plaintiff's hands and held onto them until plaintiff was removed from the vehicle. As detective Bouldin held plaintiff's cuffed hands, another unknown officer ran up and smashed out the plaintiff's passenger side window. Plaintiff was then violently remove[d] from the vehicle through the driver's side door and thrown face first onto the pavement. Now the amount of violence used to remove the already handcuffed [] plaintiff from the vehicle was so forceful that it caused plaintiff to lose a show inside the vehicle and suffer a laceration to his right foot."

(D.I. 15)

Plaintiff proceeds *pro se* and his Complaint, as well as all amendments, are liberally construed. The original complaint placed all parties on fair notice that Plaintiff was attempting to raise excessive force claims. Because he did not point to specific individuals as is required for personal involvement in claims raising constitutional violations, his original Complaint was dismissed. Plaintiff, however, was given leave to amend.

Upon the filing of the Amended Complaint, the Court liberally construed it, as it must, and determined that, based upon the allegations, Plaintiff adequately alleged excessive force occurred when Bouldin, as alleged, held onto Plaintiff until he was removed from the vehicle. The Amended Complaint alleges that Plaintiff was violently removed from the vehicle and was injured. Given that Bouldin was holding onto Plaintiff

12

and, again liberally construing the complaint, one can infer that Bouldin participated in the alleged violent removal that injured Plaintiff.

The original complaint was deficiently pled. Nonetheless, the allegations in the Amended Complaint (that corrected the deficiency) arise from the same factual occurrence, which fairly construed, implicated Bouldin who was named as a defendant in the initial complaint. The named parties, one of whom is Bouldin, were given fair notice of the general fact situation and the legal theory upon which Plaintiff proceeds. Hence, relation back is proper and the claims against Bouldin were timely filed. Therefore, the court will deny Bouldin's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## REQUEST FOR COUNSEL

Plaintiff seeks counsel on the grounds that he is indigent with no legal training, is confined in administrative segregation, has limited law library access, and no ability to investigate his case, an attorney is necessary given the conflicting statements of the parties, defense counsel is flooding him with motions, and the allegations, if proved, clearly establish a constitutional violation. (D.I. 105, 113).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[8] See *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation

---

[8]See *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. Tabron, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. See Montgomery v. Pinchak, 294 F.3d 492, 498-99 (3d Cir. 2002); Tabron, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. Tabron, 6 F.3d at 157.

Plaintiff has previously requested, and been denied, counsel. Once again reviewing Plaintiff's requests, the Court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate Plaintiff's ability to articulate his claims and represent himself. Thus, in these circumstances, the Court will deny without prejudice to renew Plaintiff's request for counsel. (D.I. 105, 113). Should the need for counsel arise later, one can be appointed at that time.

## CONCLUSION

For the above reasons, the Court will grant the Motion to Dismiss Plaintiff's Complaint against the United States for Lack of Subject Matter Jurisdiction (D.I. 71); deny Bouldin's Motion to Dismiss for Failure to State a Claim (D.I. 72); dismiss as moot the City of Wilmington and Wilmington Police Department's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 100); deny without prejudice to renew Plaintiff's Requests for Counsel (D.I. 105, 113); and order Plaintiff to show cause why Defendants Vikara and Giofre should not be dismissed. An appropriate order will be entered.